JAMES W. WILLIAMS, PLAINTIFF IN ERROR, v. JAMES C. EIKENBERRY, DEFENDANT IN ERROR.

1. **Replevin:** ALTERNATIVE JUDGMENT. Where in an action of replevin judgment in the alternative form is rendered against the plaintiff, and on execution being issued, he points out to the coroner having the execution, the property in dispute, with the request that he accept the return of the property in accordance with the judgment, which request the coroner, by direction of defendant's attorney, refuses, and by the order of such attorney returns the execution not satisfied, for want of property whereon to levy ; and plaintiff files with the clerk of the court in which the judgment was rendered an offer to return the property, and which offer is accepted upon condition

that *all* the property is returned by plaintiff to defendant, but the offer is attempted to be withdrawn soon after the filing of the acceptance, it was *Held*, Upon a plea in abatement to proceedings in error prosecuted in the supreme court by plaintiff, that the filing of the offer and of the conditional acceptance did not constitute a waiver of error by plaintiff nor satisfy the judgment, the conditions of the acceptance not being agreed to.

2. ———: ATTACHMENT. Where an officer attaches property which is subsequently replevied from him by a stranger, who claims title and the right to its possession, and such officer seeks to justify his possession under his attachment process, it is incumbent upon him to prove his authority by the order of attachment, in order to show his right to possession, and the measure of his damages, if successful in the suit.

3. ———: ———. In an action of replevin against a sheriff who had levied upon the property in controversy, the sheriff, by his answer to the plaintiff's petition, denied generally the allegations of the petition and also plead affirmatively his official character, and justified the seizure under an order of attachment, alleging the ownership of the property to be in the attachment defendant. It was *Held*, That the defenses were not inconsistent, and that the decision of the trial court in overruling a motion to require defendant to elect upon which of the defenses set up in his answer he would proceed to trial was correct.

4. **Trial:** SPECIAL FINDINGS OF JURY. Special findings of a jury must be consistent with each other upon material questions, and inconsistent with the general verdict, before a trial court will be justified in rendering judgment upon them, rather than upon the general verdict.

ERROR to the district court for Cass county. Tried below before CHAPMAN, J.

*J. H. Haldeman* and *Beeson & Sullivan*, for plaintiff in error, on necessity that officer prove his authority to attach, cited: *Oberfelder v. Kavanaugh*, 11 Neb., 483. *Mathews v. Densmore*, 43 Mich., 461. Wait Fraudulent Conveyances, Sec. 297. Inconsistent defenses. *Derby v. Gallup*, 5 Minn., 119. Maxwell's Pl. and Pr., 132. *Adams v. Trigg*, 37 Mo., 141. Special findings in verdict. *National Bank v. Peck*, 8 Kan., 660. *Harbough v. Cicott*, 33 Mich., 241.

*E. H. Wooley, H. D. Travis,* and *Covell & Polk,* for defendant in error, cited: *Levi v. Darling,* 28 Ind., 498. *Martin v. Watson,* 8 Wis., 315. *Howland v. Fuller,* 8 Minn., 50. Wells on Replevin, Sec. 168. *Jenks v. Burr,* 56 Ill., 451. 2 Greenleaf Evidence, Sec. 600. 2 Kent Com., 508.

REESE, J.

This is a petition in error, by which it is sought to reverse the judgment of the district court of Cass county in an action in replevin wherein plaintiff in error here was plaintiff and defendant in error was defendant. Judgment being in favor of defendant in the action, plaintiff seeks review.

The first question requiring notice is a plea in abatement filed in this court by defendant in error, by which he seeks to show that all errors which may appear in the record, if any should so appear, have been waived by plaintiff in error by an offer made by him to return the property to defendant, after judgment and after execution issued.

From the record before us it appears that the judgment was in the statutory alternative form for a return of the property, or for its value in case a return could not be had. (Sec. 191 *a,* civil code.) This judgment was rendered on the 4th day of February, 1887. On the 4th day of the following March an execution was issued, commanding the sheriff to cause to be made the sum of $1,739.70, together with the costs of suit. Whether or not the execution should have followed the judgment, in form, requiring the return of the property, " or the value thereof in case a return cannot be had," as expressed in the section of the code above referred to, is not before us. On the 11th day of March, plaintiff in error filed in the office of the clerk of the district court a written offer, of which the following is a copy, omitting the title of the cause, signature, and other formal parts :

" The plaintiff hereby returns to the defendant the property in controversy in this action, as per the judgment for the return thereof, said property, lumber, building material, still at the same place in Manley, Nebraska, where it was when taken by plaintiff on writ of replevin issued herein."

. On the 12th of March, the execution was returned, no property found on which to levy, "except the plaintiff's lumber yard, which was of the value of about $1,200, and upon which defendant requested no levy to be made, and ordered return of this writ." On the 28th day of April, at 8 o'clock in the morning, defendant filed in the office of the clerk of said court, the following:

" Comes now the defendant in this cause and hereby accepts the offer made and filed in this cause by the plaintiff to return the property replevied in this cause in case the plaintiff has all the property so replevied herein, and in case all of the property so replevied is returned by the plaintiff to the defendant." On the same day, but ten minutes later (8:10 A.M.), plaintiff filed an affidavit withdrawing the offer. The motion for leave to withdraw the offer was overruled by the district court. It is now urged that the offer, the acceptance, and ruling of the lower court upon the motion to withdraw must be treated as an end to the case. That the accepted offer to comply with the judgment is a waiver of errors, if any exist, and the cause can not now be reviewed on its merits. As is shown by the return of the officer, he was ordered to return the execution without molesting the lumber yard, the property in dispute, and by an affidavit it is shown that when the coroner appeared at the residence of plaintiff with the execution, accompanied by defendant's attorney, plaintiff pointed out the replevied property, and requested that the coroner take the same, but that the defendant's attorney refused to permit the officer to do so, and insisted upon collecting the judgment for money.

We do not think it necessary to inquire further into the

effect of these proceedings than is required to ascertain the effect of the offer and acceptance, as shown by the papers filed with the clerk of the district court. In this inquiry, we may assume, but not decide, that the offer, if accepted, would have the effect of satisfying the judgment. But that is not the case at bar. The acceptance is clearly based upon the condition that plaintiff should have "all the property so replevied," and that "all the property so replevied is returned by plaintiff to defendant."

The property in dispute is "a certain lot of lumber and posts, building material, fencing boards, and different kinds of lumber, and Victor platform scales," constituting what is known as a lumber yard, the value of which, as ascertained by the jury, was $1,739.70. The condition of the acceptance being that plaintiff should have *all* of the property "so replevied," and that it should *all* be "returned to defendant" by plaintiff, would seem to be intended as a refusal of the offer made, or rather an acceptance upon an impracticable, if not an impossible condition. This is quite apparent, since the proposed return had been refused some time previous, and the property being of a class which is made up of many parts, consisting of classification by quality and quantity, rather than by the specific article itself. For instance, speaking of lumber, a certain number of feet, equivalent to that taken, and of the same class and value, would have to be considered as the same as taken where the property in dispute was known by the common name of "lumber yard," kept for the purpose of trade.

After the offer to the coroner to return the property was rejected by plaintiff, it could not be expected that every piece of material was kept intact upon the supposition that plaintiff might change his mind and afterwards accept it. The offer was to return the property "still at the same place in Manley, Nebraska, where it was when taken by plaintiff," and "as per the judgment for the return thereof," being equivalent to the offer previously rejected. It

is not necessary to enquire what the effect would have been had defendant accepted the offer unconditionally as made, for he did not do this. He required the property to be returned by plaintiff to defendant, a thing which he was clearly under no obligation to do, after the offer to do so had been rejected.

It is said in defendant's brief that "the tender was accepted and the controversy as to the ownership or possession of the property between the parties to the suit, was at an end." A tender, to be effectual, must be without condition. *Tompkins v. Batie,* 11 Neb., 147. Without doubt the acceptance must be equally unconditional.

The ruling of the court upon the motion for leave to withdraw the offer from the files can have no effect upon the case, for, whether withdrawn or not, it was not accepted.

There are a number of alleged errors argued by plaintiff, but as a new trial must be given upon one, we will notice only such as may probably occur on a re-trial of the cause.

The one error to which we refer as requiring a reversal of the judgment is, that the verdict of the jury was not sustained by sufficient evidence. The property in dispute was replevied from the sheriff of Cass county, by plaintiff, who claimed to be entitled to its possession by reason of a part ownership, and a pledge or mortgage of part, as alleged in his petition. By his answer defendant denied the allegations of the petition and alleged that he was the sheriff of the county, and had seized the property as the property of Lawrence Holland, by virtue of an order of attachment issued out of the district court of Cass county, at the suit of the Commercial Bank of Weeping Water against said Holland, and that Holland was the owner of the property. The reply was, in substance, a general denial. There was no proof on the trial tending to show any justification of the sheriff in seizing the property. No proof was made that any order or writ of attachment had

ever been issued, and none was introduced in evidence, and, of course, there was no proof of the value of defendant's possession.

In *Oberfelder v. Kavanaugh*, 21 Neb., 483, S C., 32 N. W. R., 296, Judge Cobb, in writing the opinion of the court, quotes with approval the following from Drake on Attachment : "When the officer attaches property found in the possession of the defendant, he can always justify the levy by the production of the attachment writ, if the same is issued by a court or officer having lawful authority to issue it, and be in legal form. But when the property is found in the possession of a stranger, claiming title, the mere production of the writ will not justify its seizure thereunder ; the officer must go further, and prove not only that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued." He also cites a number of authorities which support the proposition. By this rule it is very clear that the officer levying the writ and seeking to hold the property in replevin proceedings against him, must at least prove his right by the introduction of the writ, which could be his only authority for the seizure. There was some proof that plaintiff was in the actual possession of the property by his alleged right of ownership prior to and at the time of the levy of the attachment, and that defendant was informed of the fact. The attachment being against a third party, in whom defendant alleged ownership, the rule above stated would have required proof "not only that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued."

As decided in *Welton v. Beltezore*, 17 Neb., 399, if defendant had the right of possession it could only extend to the amount due on his process. If that was less than the value of the property it would limit the amount of his alternative judgment. If greater, his recovery should be the value of the property. There being no proof as to the

extent of his right of possession, if any right existed, the verdict and judgment are not sustained by the evidence.

It is claimed by plaintiff in error that the court erred in overruling his motion to require defendant to elect upon which ground of defense set up in his answer he would proceed to trial. The answer consisted of a general denial and a count alleging his official capacity and justification under attachment process. In the ruling upon this motion the court did not err. The second defense stated in his answer was perhaps unnecessary, as under a general denial defendant might prove any special matter of defense, whether merely negative, by way of disproving plaintiff's right to possession, or of an affirmative character, as ownership, either general or special. The unlawful detention of the property and plaintiff's right to its possession are put in issue by the general denial. The right of defendant to hold the property by virtue of legal process could in no sense be inconsistent with the defense pleaded by the denial. *Richardson v. Steele*, 9 Neb., 483.

It is insisted that the court erred in overruling plaintiff's motion for judgment on the special findings of the jury. Plaintiff asked, and the court submitted, certain interrogatories to the jury to be answered specially. These interrogatories, with the finding of the jury thereon, are as follows:

"*First.* Did the plaintiff Williams, at the time the property in question was taken by the defendant, have a special ownership in any of said property? Yes.

"*Second.* Did the plaintiff own any of the property in question when it was taken by defendant? Yes.

"*Third.* Was the plaintiff in possession of the property in question when it was taken by defendant? Yes, as the agent of Lawrence Holland.

"*Fourth.* Was the plaintiff entitled to the possession of the property in question when this action was commenced? No."

The most that can be said by plaintiff upon a motion for judgment in his favor is, that these findings are contradictory. If plaintiff was not entitled to the possession of the property when he commenced his action—and so the jury found—he could not recover. It is true the jury said he had a special ownership in a *part* of the property, and that he owned a part; yet, if he was not entitled to the possession he could not recover a judgment therefor.

As we read the testimony, plaintiff's claim was, that he was a joint owner with Lawrence Holland in the lumber yard, and that he had a lien upon Holland's interest for certain money paid out for Holland. But this idea is not embodied in the interrogatories submitted to the jury. If plaintiff had a special ownership in *part* of the property he might not be entitled to the possession of *all*. The same might be true if he was the absolute owner of a part. The court did not err in this ruling.

For the reason that the verdict of the jury is not sustained by sufficient evidence the judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.